FILED
CLERK, U.S. DISTRICT COURT

JAN - 3 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

TIMOTHY WAYNE ARNETT,               )     NO. CV 11-5898-JAK(E)
                                    )
            Petitioner,             )
                                    )
      v.                            )     ORDER ACCEPTING FINDINGS,
                                    )
ARCOLA WASHINGTON-ADDUCI,           )     CONCLUSIONS AND RECOMMENDATIONS
                                    )
            Respondent.             )     OF UNITED STATES MAGISTRATE JUDGE
                                    )
_____)

        Pursuant to 28 U.S.C. § 636, the Court has reviewed the
Petition, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.  The Court accepts
and adopts the Magistrate Judge's Report and Recommendation.


        IT IS ORDERED that Judgment be entered denying and dismissing
the Petition without prejudice.

///
///
///
///

1       IT IS FURTHER ORDERED that the Clerk serve copies of this

2   Order, the Magistrate Judge's Report and Recommendation and the

3   Judgment herein on Petitioner and counsel for Respondent.

4

5       LET JUDGMENT BE ENTERED ACCORDINGLY.

6

7       DATED: _____1/3/12_____.

8

9

10

    JOHN A. KRONSTADT

11    UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    2

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  TIMOTHY WAYNE ARNETT,          )    NO. CV 11-5898-JAK(E)
                                   )
12            Petitioner,          )
                                   )
13     v.                          )    REPORT AND RECOMMENDATION OF
                                   )
14  ARCOLA WASHINGTON-ADDUCI,      )    UNITED STATES MAGISTRATE JUDGE
                                   )
15            Respondent.          )
                                   )
16  _____)

17

18       This Report and Recommendation is submitted to the Honorable

19  John A. Kronstadt, United States District Judge, pursuant to

20  28 U.S.C. section 636 and General Order 05-07 of the United States

21  District Court for the Central District of California.

22

23                          PROCEEDINGS

24

25       On July 18, 2011, Petitioner filed a "Petition for Writ of Habeas

26  Corpus By a Person in Federal Custody."  On July 27, 2011, Petitioner

27  filed a supporting memorandum ("Pet. Memo").  Petitioner alleges that

28  the Bureau of Prisons assertedly: (1) denied Petitioner due process by

1   failing to consider Petitioner for placement in a Residential Reentry

2   Center ("RRC") for the last twelve months of his sentence as an

3   "achievement award" for completing a non-residential drug abuse

4   program (Petition, Ground One; Pet. Memo, pp. 1-5); and (2) failed to

5   establish an incentive program for participation in skills development

6   programs (Petition, Ground Two; Pet. Memo, pp. 6-12).

7

8      On October 3, 2011, Respondent filed an Answer to the Petition.

9   On October 19, 2011, Petitioner filed a Reply.

10

11                **BACKGROUND**

12

13      Petitioner is serving a 300-month sentence for armed bank robbery

14   (Petition, p. 2).  Assuming Petitioner earns all available good

15   conduct credit, his projected release date is July 1, 2017.  See

16   Declaration of Mark Colangelo filed with Answer ("Colangelo Decl."),

17   ¶ 5 & Ex. A thereto.  While incarcerated, Petitioner has earned an

18   Associate of Arts degree from Coastline Community College.  See Pet.

19   Memo Ex. B (copy of diploma dated December 2009).  Petitioner also

20   completed a Non-Residential Drug Abuse Program on or about March 8,

21   2011 (Pet. Memo Ex. A).

22

23      On May 10, 2010, Petitioner submitted a "Request for

24   Administrative Remedy" form to his warden, requesting that the Bureau

25   of Prisons (the "Bureau") create an incentive program in accordance

26   ///

27   ///

28   ///

1 | with 42 U.S.C. section 17541(a)(2)(A) - (B),[1] and grant Petitioner one

2 | year placement in an RRC and a $50 "reward" for completion of his

3 | college degree (Colangelo Decl. Ex. D-1). On June 3, 2010,

4 | Petitioner's warden denied the request, stating that: (1) the current

5 | Bureau policy did not include monetary incentives for completion of a

6 | college degree; (2) on October 10, 2008, prior to Petitioner earning

7 | his degree, Petitioner's unit team had considered Petitioner for RRC

8 | placement in accordance with the "Second Change [Sic] Act of 2007,"[2]

9 | and determined that an RRC placement of 150-180 days was appropriate

---

[1]    Section 17541(a)(2)(A) - (B), entitled the "Federal prisoner reentry initiative," provides:

> (a) In general.  The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:
>
> (1)  The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons - . . . (G) provide incentives for prisoner participation in skills development programs.
>
> (2)  Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include - (A) the maximum allowable period in a community confinement facility [RRC]; and (B) such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment).

See 42 U.S.C. § 17541 (emphasis added).

[2]    The "Second Chance Act of 2007," Pub. L. 110-199, 122 Stat. 657 (2007) ("Second Chance Act") amended 18 U.S.C. section 3624, which governs the designation of prisoners to RRCs for the final months of their sentences.  See Sacora v. Thomas, 628 F.3d 1059, 1062 (9th Cir. 2010), cert. denied, 2011 WL 4530684 (U.S. Oct. 3, 2011) (discussing same).

1    for Petitioner's reintegration into the community; and (3) on

2    February 11, 2010, after Petitioner earned his degree, Petitioner's

3    unit team reviewed Petitioner for immediate transfer to an RRC and

4    determined that Petitioner's current security classification merited

5    placement in a "Low" security level facility.  <u>See</u> Colangelo Decl. Ex.

6    D-3.[3]

7

8         On June 9, 2010, Petitioner submitted a "Regional Administrative

9    Remedy Appeal" form requesting that he receive as an award for his

10    degree $50 and a full 12-month RRC placement (Colangelo Decl. Ex. D-4

11    - D-5).  On July 8, 2010, Petitioner's regional director denied the

12    request, stating:

13

14         There are no specific incentive awards for this particular

15         accomplishment. . . .  Although preliminary RRC

16         consideration by the unit team using the five-factor

17         criteria predicts you would be eligible for 150-180 days in

18         an RRC, it is too soon to evaluate you for pre-release

19         placement as you have seven years remaining on your

20         sentence.  You will be evaluated when you are within 17-19

21         months from release.  However, in February 2010, the unit

22         team reviewed your case for possible immediate transfer to

23         an RRC as a place of confinement.  Based on your instant

24         offense and criminal history, you are accurately scored as a

25    _____

26        [3]     Petitioner's warden noted that Petitioner had received
incentives for completing his degree in that Petitioner's custody

27    classification was "positively affected" and scored as "Low," and
that Petitioner's transfer to a low security facility had been

28    initiated.  <u>See</u> Colangelo Decl. Ex. D-3.

1      Low security level offender and do not qualify for placement

2      in a community setting at this time.

3

4  (Colangelo Decl. Ex. D-6).

5

6      On July 25, 2010, Petitioner submitted a "Central Office

7  Administrative Remedy Appeal" form requesting the same relief as

8  requested from the Regional Director (Colangelo Decl. Ex. D-7).   On

9  January 19, 2011, the Administrator of National Inmate Appeals denied

10  the request, explaining:

11

12      There is no current provision in policy for issuing monetary

13      awards to inmates who complete a college degree.   No inmate

14      is entitled to either RRC placement or placement of a

15      particular duration.   The maximum duration of RRC placement

16      was enlarged to 12 months by the Second Chance Act of 2007.

17      You did, however, receive a lesser security transfer to FCI

18      Terminal Island.   Inmates are considered on an individual

19      basis for pre-release community confinement in a manner

20      consistent with the criteria established at 18 U.S.C. §

21      3621(b).

22

23      Your unit team considered your request for transfer to an

24      RRC, but determined transfer is not warranted at this time.

25      . . .   Inmates are considered for pre-release RRC placement

26      ordinarily 17 to 19 months prior to their projected release

27      date.   You are currently projected for release on July 1,

28      2017, so it is too soon for you to be transferred to an RRC

1   for pre-release purposes. . . . If you are not satisfied

2   with the recommendation made by your unit team, you may

3   initiate a separate Request for Administrative Remedy at

4   your local institution.

5

6 (Colangelo Decl. Ex. D-8).

7

8   On January 20, 2011, near the completion of Petitioner's Non-

9 Residential Drug Abuse Program, Petitioner submitted a "Request for

10 Administrative Remedy Form" to his warden, requesting approval for a

11 12-month placement in an RRC as an achievement award for completing

12 the drug program (Colangelo Decl. Ex. C-1 - C-2). On February 15,

13 2011, Petitioner's warden denied the request, stating, "You have been

14 informed previously that a review of your record will be conducted by

15 your unit team, and they will submit an RRC referral packet at an

16 appropriate time and you will be informed by the team of the outcome

17 of their RRC referral request" (Colangelo Decl. Ex. C-3).

18

19   On February 16, 2011, Petitioner submitted a "Regional

20 Administrative Remedy Appeal" form requesting return of the matter to

21 Petitioner's warden with instruction to award the maximum amount of

22 RRC placement time to Petitioner (Colangelo Decl. Ex. C-4 - C-5). On

23 March 15, 2011, Petitioner's regional director denied the request,

24 stating:

25

26   A review of your case reveals that you are serving a 300-

27   month sentence and have a projected release date of July 1,

28   2017, which is 75 months from now. Staff will formally

1        evaluate you for a pre-release transfer to an RRC when you

2        are 17-19 months from your projected release date.

3        Institution staff will utilize Program Statement 7310.04,

4        <u>Community Corrections Center (CCC) Utilization and Transfer</u>

5        <u>Procedure</u>,[4] and the criteria set forth in the Second Chance

6        Act of 2007 in making their decision.

7

8    (Colangelo Decl. Ex. C-6).

9

10       On April 6, 2011, Petitioner submitted a "Central Office

11   Administrative Remedy Appeal" form appealing the Regional Director's

12   denial (Colangelo Decl. Ex. C-7).  On June 3, 2011, the Administrator

13   of National Inmate Appeals denied the request, explaining:

14

15       The maximum duration of RRC placement was enlarged to 12

16       months by the Second Chance Act of 2007. . . .  Inmates are

17       considered on an individual basis for pre-release community

18       confinement in a manner consistent with the criteria

19       established at 18 U.S.C. § 3621(b). . . .

20   ///

21   ///

22   _____

23       [4]   Program Statement 7310.04 is the Bureau's Program
     Statement concerning RRC placement procedures.  <u>See</u> Bureau of
24   Prisons, <u>Community Corrections Center (CCC) Utilization and</u>
     <u>Transfer Procedure</u> (Dec. 16, 1998), available at <u>http://</u>
25   <u>www.bop.gov/policy/progstat/7310_004.pdf</u> (last visited Nov. 4,
     2011).  The Statement remains in effect "with minor adjustments"
26   to comply with the Second Chance Act.  <u>See</u> Colangelo Decl. Ex. E-
     2 - E-4 (April 14, 2008 Bureau memorandum explaining the changes
27   to the law and applicable Bureau policies following the Second
     Chance Act).
28

1       You are currently projected for release on July 1, 2017.

2       Prison staff have informed you they will consider you for

3       RRC placement at the appropriate time. . . . Program

4       Statement 5330.11, Psychology Treatment Programs,[5] does not

5       mandate the approval of a maximum period [of] RRC placement

6       for inmates who successfully complete the non-residential

7       drug abuse program. . . . We find no basis to compel staff

8       to conduct a review for your RRC placement outside of the

9       current established procedures.

10

11  (Colangelo Decl. Ex. C-8).

12

13      At Petitioner's most recent Program Review, which occurred on

14  June 15, 2011, Petitioner's Unit Team reportedly discussed with

15  Petitioner his pre-release placement in an RRC (Colangelo Decl. ¶ 17 &

16  Ex. H-12). The Unit Team determined that a pre-release RRC placement

17  review would be considered when Petitioner was with 17 to 19 months

18  from his release date (Id.). Petitioner's Inmate Skills Development

19  Plan prepared from this Program Review notes that Petitioner's

20  security level remains "Low" (Colangelo Decl. Ex. H-1).

21  ///

22  ///

23  _____

24      [5]    Program Statement 5330.11 provides in relevant part:

25      Each warden is strongly encouraged to approve inmates
        who successfully complete the non-residential drug

26      abuse program for the maximum period of RRC placement.

27  See Bureau of Prisons, Psychology Treatment Programs (Mar. 16,
    2009), at § 2.4.8, available at http://www.bop.gov/policy/

28  progstat/5330_011.pdf (last visited Nov. 3, 2011).

8

1                 **PETITIONER'S CONTENTIONS**

2

3      Petitioner contends that the Bureau denied Petitioner due process

4 by failing to consider Petitioner for a full 12-month RRC placement as

5 an achievement award for completing the Non-Residential Drug Abuse

6 Program, without reference to the factors set forth in Section 3621(b)

7 and without input from Petitioner's unit team (Petition Ground One;

8 Pet. Memo, pp. 4-5; Reply, § A).  Petitioner also contends that the

9 Bureau has failed to develop an incentive program to reward prisoners

10 who participate in skill development programming, such as completion

11 of college courses, as assertedly required by 42 U.S.C. section 17541

12 (Petition Ground Two; Pet. Memo, pp. 10-12; Reply, § B).

13

14      Petitioner requests that the Court order Respondent to consider

15 Petitioner for a 12-month RRC placement without consideration of the

16 factors set forth in Section 3621(b) or Section 3624(c) (Pet. Memo,

17 pp. 5, 12; Reply, §§ A-B).  Alternatively, Petitioner asks the Court

18 to order the Bureau to consider transferring Petitioner to a minimum

19 security camp which Petitioner alleges is commensurate with

20 Petitioner's security custody level (Reply, § B).  Petitioner also

21 requests that the Court order the Bureau to develop an award system

22 that rewards inmates for taking college courses (Reply, § B).

23

24                **GOVERNING LEGAL STANDARDS**

25

26      As amended by the Second Chance Act, 18 U.S.C. section 3624

27 governs the designation of prisoners to RRCs for the final months of

28 their sentences.  See <u>Sacora v. Thomas</u>, 628 F.3d 1059, 1062 (9th Cir.

1  2010), <u>cert. denied</u>, 2011 WL 4530684 (U.S. Oct. 3, 2011).  Section

2  3624(c) provides that the Bureau:

4        shall, to the extent practicable, ensure that a prisoner

5        serving a term of imprisonment spends a portion of the final

6        months of that term (not to exceed 12 months), under

7        conditions that will afford that prisoner a reasonable

8        opportunity to adjust to and prepare for reentry of that

9        prisoner into the community.  Such conditions may include a

10       community correctional facility.[6]

12  <u>See</u> 18 U.S.C. § 3624(c)(1).  Section 3624(c)(6) delegates to the

13  Bureau the responsibility to issue regulations to ensure that

14  placement in a community correctional facility is conducted in a

15  manner consistent with 18 U.S.C. section 3621(b),[7] determined on an

---

17       [6]  Community Correctional facilities are also known as
Residential Reentry Centers.  <u>See</u> <u>Sacora v. Thomas</u>, 628 F.3d at
18  1061; <u>see also</u> Bureau of Prisons, <u>Statement of Work, Residential</u>
<u>Reentry Center</u>, Attachment F (Revision Feb. 2010) (defining
19  "Residential Reentry Center"), available at www.bop.gov/business/
res_reentry_ctr_sow_2010.pdf (last visited Nov. 8, 2011).

21       [7]  Section 3621 provides in pertinent part:

22       (b) <u>Place of imprisonment</u>.  The Bureau of Prisons
         shall designate the place of the prisoner's
23       imprisonment.  The Bureau may designate any available
         penal or correctional facility that meets minimum
24       standards of health and habitability established by the
         Bureau, whether maintained by the Federal Government or
25       otherwise and whether within or without the judicial
         district in which the person was convicted, that the
26       Bureau determines to be appropriate and suitable,
         considering-
27

28                                                    (continued...)

10

1   individual basis, and "of sufficient duration to provide the greatest

2   likelihood of successful reintegration into the community."  <u>See</u> 18

3   U.S.C. § 3624(c)(6).  The Bureau accordingly has adopted policies for

4   designating RRC placement, which the Ninth Circuit has approved.  <u>See</u>

5   <u>Sass v. Thomas</u>, 405 Fed. App'x 202, 203 (9th Cir. Dec. 8, 2010)

6   (citing <u>Sacora v. Thomas</u>, 628 F.3d at 1061, as approving the Bureau's

7   Second Chance Act-related policies);[8] <u>Sacora v. Thomas</u>, 628 F.3d at

8   1061-67 (discussing applicable policies); <u>see also</u> 28 C.F.R. §§

9   570.20-.22 (applicable regulations which track language in 18 U.S.C. §

10   3624(c)(6)); Colangelo Decl. Exs. E-F (April 14, 2008 and June 24,

11   2010 Bureau memoranda outlining modified procedures for determining

12   ///

13   ///

14   ///

15   ///

16   _____

17   [7](...continued)
     (1) the resources of the facility contemplated;
18     (2) the nature and circumstances of the offense;
     (3) the history and characteristics of the prisoner;
19     (4) any statement by the court that imposed the sentence--
        (A)  concerning the purposes for which the sentence to
20           imprisonment was determined to be warranted; or
        (B)  recommending a type of penal or correctional
21           facility as appropriate; [] <u>and</u>
22     (5)  any pertinent policy statement issued by the Sentencing
        Commission pursuant to section 994(a)(2) of title 28.
23

24     . . .  The Bureau may at any time, having regard for
     the same matters, direct the transfer of a prisoner
25     from one penal or correctional facility to another.

26   18 U.S.C. § 3621(b) (emphasis added).

27     [8]    The Court may cite unpublished Ninth Circuit opinions
   issued on or after January 1, 2007.  <u>See</u> U.S. Ct. App. 9th Cir.
28   Rule 36-3(b); Fed. R. App. P. 32.1(a).

1  RRC placements based on the Second Chance Act).[9]

2

3       The Bureau is solely responsible for designating the place of a

4  federal prisoner's confinement. 18 U.S.C. § 3621(b).  A federal

5  habeas court lacks jurisdiction to review the Bureau's individualized

6  placement determinations.  See Reeb v. Thomas, 636 F.3d 1224, 1227-28

7  (9th Cir. 2011) ("To find that prisoners can bring habeas petitions

8  under 28 U.S.C. § 2241 to challenge the [Bureau's] discretionary

9  determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent

10  with the language of 18 U.S.C. § 3625. . . . [F]ederal courts lack

11  jurisdiction to review the [Bureau's] individualized [] determinations

12  made pursuant to 18 U.S.C. § 3621."); see also United States v.

13  Dragna, 746 F.2d 457, 458 (9th Cir. 1984), cert. denied, 469 U.S. 1211

14  (1985) (district court does not have jurisdiction to decide the

15  location of a defendant's incarceration; that decision rests solely

16  with the executive branch); United States v. Charry Cubillos, 91 F.3d

17  1342, 1343 n.1 (9th Cir. 1996) (citing Dragna); Cook v. Wiley, 208

18  F.3d 1314, 1319 (11th Cir. 2000) (18 U.S.C. § 3625 precludes habeas

19  review of Bureau's adjudicative decisions, although it does not

20  preclude review of Bureau's rulemaking decisions); Martin v.

21  Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) (same); cf. Brown v.

22  Atkinson, 2010 WL 3659634, at *5 (S.D. Fla. June 11, 2010), adopted,

23  2010 WL 3659587 (S.D. Fla. Sept. 15, 2010) ("decisions regarding the

24  prisoner's placement, including whether, when, and for how long he [or

25  _____

26       [9]    Although not discussed in Sacora, the Bureau's June 24,
    2010 memorandum reaffirms that inmates must continue to be
27  individually assessed for their appropriateness for pre-release
    RRC placement using the five factors from 18 U.S.C. section
28  3621(b).  See Colangelo Decl. Ex. F-2.

1  she] might appropriately be placed [] in a pre-release setting. . . ,

2  are for the [Bureau] to make, and are matters over which this Court

3  does not have authority"); <u>Arred v. Phillips</u>, 2008 WL 4219074, at *3

4  n.2 (N.D. W.Va. Sept. 15, 2008) (the court lacks authority to order

5  the Bureau to afford a longer period of community corrections

6  placement once a decision is made).

7

8      Even where a petitioner successfully challenges the Bureau's RRC

9  placement policies (as opposed to placement decisions), the only

10 relief a habeas court may grant is an order for individualized

11 consideration of RRC placement in accordance with applicable laws.

12 See <u>Rodriguez v. Smith</u>, 541 F.3d 1180, 1189 (9th Cir. 2008) (affirming

13 grant of writ of habeas corpus based on finding Bureau's former

14 policies unlawful, and ordering the Bureau to consider petitioner for

15 transfer to an RRC in accordance with 18 U.S.C. section 3621(b),

16 rather than ordering immediate transfer); <u>cf.</u> <u>Crickon v. Thomas</u>, 579

17 F.3d 978, 988-89 (9th Cir. 2009) (remanding case to grant habeas

18 petition based on invalidity of Bureau rule concerning early release

19 eligibility, and ordering district court to instruct the Bureau to

20 reconsider petitioner's eligibility for early release in accordance

21 with 18 U.S.C. section 3621(e)(2)(B), rather than ordering early

22 release).

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1          **DISCUSSION**

2

3          For the reasons discussed below, the Petition should be denied

4     and dismissed without prejudice.[10]

5

6     I.    Petitioner's Challenge to the Bureau's Alleged Failure to

7           Consider Petitioner for a Full Twelve-Month RRC Placement as an

8           Achievement Award Does Not Merit Habeas Relief.

9

10          As summarized above, in response to Petitioner's request that the

11    Bureau consider Petitioner for RRC placement as an award for

12    completing the drug program,[11] prison officials have advised

13    Petitioner that Petitioner will be considered for RRC placement at 17

14    to 19 months before his release date in accordance with Bureau

15    guidelines.  Petitioner alleges that the Bureau's failure to consider

16    Petitioner for RRC placement upon Petitioner's request, and without

17    regard to the factors set forth in section 3621(b), has violated due

18    process.  (See Pet. Memo at 4-5; Reply at A).

19    ///

20    _____

21          [10]    The Court has considered and rejected all of
      Petitioner's arguments.  The Court discusses Petitioner's
22    principal arguments herein.  The recommended dismissal should be
      without prejudice to any rights or remedies Petitioner may have
23    under Bivens v. Six Unknown Named Agents of the Federal Bureau of
      Narcotics, 403 U.S. 388 (1971), the Federal Tort Claims Act, or
24    any other federal law potentially authorizing the recovery of
      damages.
25

26          [11]    Petitioner began his administrative appeals related to
      this request the day after the Administrator of National Appeals
27    advised Petitioner that his unit team had considered Petitioner's
      request for a transfer to an RRC and determined transfer was not
28    warranted at that time.  See Colangelo Decl. Exs. C-D.

                                   14

1  Petitioner's due process claim must fail.  A prisoner has no

2  liberty interest in being housed in a particular prison.  See Witherow

3  v. Crawford, 339 Fed. App'x 785, 786 (9th Cir. July 31, 2009), cert.

4  denied, 130 S. Ct. 2107 (2010) (citing Meachum v. Fano, 427 U.S. 215,

5  224-27 (1976) ("The Constitution does not. . . guarantee that the

6  convicted prisoner will be placed in any particular prison. . . .")).

7  Congress has vested in the Bureau "full discretion to control []

8  conditions of confinement," including prisoner classification and

9  eligibility for rehabilitative programs.  Moody v. Daggett, 429 U.S.

10  78, 88 n.9 (1976); see also Reeb v. Thomas, 636 F.3d at 1228 n.4

11  (noting that prisoner's due process claim concerning the conditions of

12  confinement failed because inmates have no protected liberty interest,

13  citing, inter alia, Moody v. Daggett); 18 U.S.C. § 3621.

14

15  Petitioner has no constitutional or statutory right to

16  consideration for a transfer to an RRC at any time prior to when 18

17  U.S.C. section 3624(c) comes into play.  See Navarro v. Smith, 2007 WL

18  1764949, at *4 (E.D. Cal. June 19, 2007), adopted, 2007 WL 2206915

19  (E.D. Cal. July 30, 2007) ("The Court is unaware of any authority

20  requiring the [Bureau] to conduct its RRC eligibility reviews or

21  immediately transfer a prisoner to an RRC facility on demand of a

22  prisoner.") (emphasis original).  Section 3621(b) is entirely silent

23  regarding when, if ever, the Bureau must transfer any prisoner.  The

24  statute is equally silent regarding when, if ever, the Bureau must

25  consider a request for a transfer.  See 18 U.S.C. § 3621(b).  Program

26  Statement (PS 5330.11), which provides that each warden is "strongly

27  encouraged to approve inmates who successfully complete the non-

28  residential drug abuse program for the maximum period of RRC

1  placement,"[12] does not entitle Petitioner to maximum RRC placement.

2  See Pet. Memo at 5. Nor does the Program Statement provide when, if

3  ever, a warden must consider an inmate's request for RRC placement as

4  an achievement award.  The Bureau's alleged failure to consider

5  Petitioner's request to be awarded a particular achievement award,

6  made seven years before his projected release date, plainly did not

7  violate due process.

8

9      The Bureau does have a statutory obligation to consider

10  transferring a prisoner once 18 U.S.C. section 3624(c) comes into

11  play.  To the extent practicable, the Bureau must ensure that

12  prisoners nearing the end of their term of imprisonment spend a

13  portion of the final months under conditions affording the prisoners a

14  reasonable opportunity to prepare for reentry into the community –

15  conditions which "may" include up to 12 months' placement in an RRC.

16  See 18 U.S.C. 3624(c)(1); see also Sacora v. Thomas, 628 F.3d at 1070

17  (Section 3624(c) affords the Bureau the "option" of making RRC

18  placements up to 12 months; placement is not required).  As summarized

19  above, Congress directed the Bureau to issue regulations to ensure

20  that placement in an RRC is: (1) conducted in a manner consistent with

21  section 3621(b); (2) determined on an individual basis; and (3) of

22  sufficient duration to provide the greatest likelihood of

23  reintegration into the community.  See 18 U.S.C. § 3624(c)(6); see

24  also Rodriguez v. Smith, 541 F.3d at 1187 (finding that review under

25  section 3621(b)'s five factors is "mandatory").  Had Congress intended

26

27      [12]See Bureau of Prisons, Psychology Treatment Programs (Mar.
16, 2009), at § 2.4.8, available at http://www.bop.gov/policy/
28  progstat/5330_011.pdf (last visited Nov. 3, 2011).

1   to require the Bureau periodically to review placements or to consider

2   transfer requests years prior to the prisoners' projected release

3   dates and without regard to section 3621(b), Congress presumably would

4   have said so.   Congress did not.   Rather, Congress delegated to the

5   Bureau the task of issuing regulations, and the Bureau's regulations

6   do not provide any deadlines for reviewing inmates' transfer requests.

7   See 28 C.F.R. §§ 570.20-22.

8

9        The Bureau's internal memoranda provide that pre-release RRC

10   determinations will be made between 17 and 19 months prior to the

11   expiration of a prisoner's term, and that RRC transfer requests made

12   before the last year of a sentence will be reviewed at regularly

13   scheduled program meetings.   See Colangelo Decl. Ex. E-3 (Bureau's

14   April 14, 2008 memorandum provides that, because the Second Chance Act

15   increased the maximum available pre-release RRC placement time to 12

16   months, Bureau staff must review inmates for pre-release earlier than

17   stated in Program Statement 7310.04); see also Sacora v. Thomas, 628

18   F.3d at 1068-69 (approving Bureau guidelines set forth in the

19   April 14, 2008 and November 14, 2008 memoranda; observing that

20   November 14, 2008 memorandum provides guidance for Bureau staff when

21   considering inmate requests for transfers to RRCs before the final 12

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1   months of the inmate's sentence).[13]

2

3        In accordance with the Bureau's November 14, 2008 memorandum

4   (which supplements Program Statement 7310.04), the Bureau arguably

5   should have expressly reviewed Petitioner's request for a transfer at

6   his next regularly scheduled Program Review.  Any failure to have done

7   so does not support a habeas claim, however.  "A habeas claim cannot

8   be sustained based solely upon the [Bureau's] purported violation of

9   its own program statement because noncompliance with a [Bureau]

---

[13]      Mark Colangelo does not discuss the November 14, 2008
memorandum in his declaration or provide the Court with a copy of
the memorandum.  See Colangelo Decl.  A copy of the November 14,
2008 memorandum was filed in another case before this Court, Rowe
v. Quintana, CV 10-8233-SVW(E).  See Exhibit C to the Declaration
of Jeffrey Horton filed with "Respondent's Response to the
Petition for Writ of Habeas Corpus, etc." in the Rowe case on
February 8, 2011.  The November 14, 2008 memorandum provides, in
relevant part:

>    **Timing of Reviews.**  If an inmate requests transfer to
>    an RRC prior to the pre-release time frame of 12-months
>    from release, staff must individually consider the
>    request, just as they would any other request for lower
>    security transfer.  There is no need, however, to
>    immediately perform the individualized review at the
>    moment it is submitted.  Rather, the inmate should be
>    informed that his/her request will be fully reviewed in
>    conjunction with the next scheduled Program Review.
>
>                          * * *
>
>    If staff determine, . . . after individualized review,
>    that the inmates's current designation is commensurate
>    with his/her security and programming needs, the inmate
>    will be informed that the current designation is
>    appropriate, and that the transfer request is denied.

Id. at 2-3 (emphasis original).  The Court takes judicial notice
of the November 14, 2008 memorandum filed in the Rowe case.  See
Mir v. Little Company of Mary Hosp., 844 F.2d 646, 649 (9th Cir.
1998) (court may take judicial notice of court records).

program statement is not a violation of federal law." <u>Reeb v. Thomas</u>, 636 F.3d at 1227; <u>see also</u> <u>Sun v. Ashcroft</u>, 370 F.3d 932, 937 (9th Cir. 2004) ("The general habeas statute, 28 U.S.C. § 2241, limits claims to those that allege violations of the constitution, federal statute, or treaties.") (citation and internal quotations omitted); <u>Gutierrez-Chavez v. I.N.S.</u>, 298 F.3d 824, 827 (9th Cir. 2002), <u>amended</u>, 337 F.3d 1023 (9th Cir. 2003) (habeas relief is unavailable under section 2241 "to challenge purely discretionary (yet arguably unwise) decisions made by the executive branch that do not involve the Constitution or federal law").  Moreover, had the Bureau expressly reviewed Petitioner's request for a transfer, the outcome of the review doubtlessly would have been the same as the Bureau's then recent denial of a similar request by Petitioner.  <u>See</u> Colangelo Decl. Exs. D-8, H-1.

Circuit and District Courts are in accord that inmates are not entitled to individualized consideration for RRC placement at all times of the inmates' choosing.  <u>See, e.g.</u>, <u>Miller v. Whitehead</u>, 527 F.3d 752, 757 (8th Cir. 2008) (an inmate is not "entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in § 3621(b), whenever an inmate chooses to make such a request"); <u>Muniz v. Sabol</u>, 517 F.3d 29, 36 n.14 (1st Cir.), <u>cert. denied</u>, 555 U.S. 853 (2008) (section 3621(b) does not require individualized consideration until the Bureau has decided to exercise its discretion to transfer an inmate); <u>Ingram v. Thomas</u>, 2011 WL 1791234, at *4 (D. Or. May 10, 2011) ("inmates are not entitled to individualized consideration of the factors in §3621(b) any time an inmate so requests"); <u>Binford v. Thomas</u>, 2011 WL 1791198,

1  at *4 (D. Or. May 10, 2011) (same); <u>Sass v. Thomas</u>, 2009 WL 2230759,

2  at *7 (D. Or. July 23, 2009), <u>affirmed</u>, 405 Fed. App'x 202 (9th Cir.

3  Dec. 8, 2010) (Bureau has no duty to analyze RRC requests under

4  section 3621(b) "at an inmate's whim"); <u>Stockton v. Adler</u>, 2008 WL

5  5136133, at *3 (E.D. Cal. Dec. 8, 2008), <u>adopted</u>, 2009 WL 188145 (E.D.

6  Cal. Jan. 23, 2009) (inmate has no statutory right to immediate

7  assessment or transfer under section 3621(b)).

8

9      Petitioner maintains that, without immediate consideration of a

10  12-month RRC placement, the time frame may be too short to guarantee

11  review by a federal court should Petitioner take issue with the

12  Bureau's placement decision (Reply, § C).  Petitioner suggests that,

13  if the Bureau reviews Petitioner's release plan 17 to 19 months prior

14  to his projected release date and determines an RRC placement length

15  with which Petitioner disagrees, by the time Petitioner completes

16  administrative review of the Bureau's decision and files a habeas

17  petition he will be close enough to his anticipated release date

18  effectively to preclude judicial review (Reply, § C).

19

20      While the Court is mindful of the time required to exhaust an

21  administrative appeal where a prisoner seeking RRC placement may have

22  only a limited time remaining in custody, Petitioner will not be

23  without review should he disagree with the Bureau's initial placement

24  decision.  Petitioner will be able to appeal the decision within the

25  Bureau pursuant to the Bureau's Administrative Remedy Program, 28

26  C.F.R. sections 542.10-19.  Moreover, as explained above, it is not

27  within the jurisdiction of the federal habeas court to review the

28  Bureau's purely discretionary decision regarding how much time

1  Petitioner should spend in an RRC; the Court may only review whether

2  Petitioner has received individualized consideration.   Reeb v. Thomas,

3  636 F.3d at 1227.   In any event, Congress chose not to require the

4  Bureau to make an RRC placement decision years before the decision

5  would be implemented.   It is not within this Court's proper habeas

6  authority to evaluate the wisdom of that choice.

7

8       For all the foregoing reasons, Petitioner's due process claim

9  does not merit federal habeas relief.[14]

10

11  II.   **Petitioner's Challenge to the Bureau's Alleged Failure to**

12       **Establish an Incentive Program in Accordance with 42 U.S.C. §**

13       **17541 Does Not Merit Habeas Relief.**

14

15       Petitioner contends that the Bureau has failed to establish an

16  incentive program to award skill development programming, such as

17  earning a college degree, as purportedly required by 42 U.S.C. section

18  _____

19       [14]    To the extent Petitioner may also be trying to bring a
    general challenge under the Administrative Procedure Act ("APA"),

20  5 U.S.C. section 701 et seq., to the Bureau's regulation
    concerning non-residential drug abuse treatment services,

21  Petitioner is not entitled to habeas relief.   See Reply, § A.
    The APA provides a cause of action for persons suffering legal

22  wrongs because of agency action.   5 U.S.C. § 702.   The regulation
    at issue in this case, 28 C.F.R. § 550.52, merely provides that

23  all institutions must have non-residential drug abuse treatment
    services available to inmates who voluntarily decide to

24  participate.   The regulation does not mention program incentives.
    See 28 C.F.R. § 550.52.   Program Statement 5330.11, which does

25  mention incentives and is the basis for Petitioner's RRC request,
    is not subject to the "rigors" of the APA.   See Reeb v. Thomas,

26  636 F.3d at 1227 (explaining that program statements are merely

27  internal agency guidelines; citing, inter alia, Jacks v.
    Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997), cert. denied,

28  523 U.S. 1009 (1998)).

1  17541(a)(2)(A) (Petition, Ground Two; Pet. Memo, pp. 6-10; Reply, §
2  B).   Petitioner concedes that the Bureau is not required to give him
3  any specific award for earning his college degree, but asserts that
4  the Second Chance Act requires the Bureau to give him "something
5  meaningful" (Reply, § B; see also Pet. Memo, p. 5 (acknowledging that
6  Program Statement 5330.11 does not entitle Petitioner to the maximum
7  RRC placement)).

8

9      Section 17541, which was created by the Second Chance Act,
10  provides in relevant part:

11

12      The Attorney General, in coordination with the Director of
13      the Bureau of Prisons, shall, subject to the availability of
14      appropriations, conduct the following activities to
15      establish a Federal prisoner reentry initiative:   The
16      establishment of a Federal prisoner reentry strategy to help
17      prepare prisoners for release and successful reintegration
18      into the community, including, at a minimum, that the Bureau
19      of Prisons. . .   provide incentives for prisoner
20      participation in skills development programs.

21

22  42 U.S.C. § 17541(a)(1)(G).   Such incentives "may, at the discretion
23  of the Director, include [] the maximum allowable period in a
24  community confinement facility; and [] such other incentives as the
25  Director considers appropriate."   42 U.S.C. § 17541(a)(2)(A) (emphasis
26  added).
27  ///
28  ///

1    As Petitioner acknowledges, the Second Chance Act does not

2    mandate that the Bureau designate those prisoners who participate in

3    skills development programs for the full twelve months of RRC

4    placement as an incentive for such participation.   The Act expressly

5    leaves to the discretion of the Bureau the nature of the incentives.

6    See 42 U.S.C. § 17541(a)(2)(A); see also Richardson v. Dir. for Fed.

7    Bureau of Prisons, 2011 WL 2559423, at *1 (3d Cir. June 29, 2011)

8    (rejecting claim that Second Chance Act requires that Bureau give any

9    particular incentives to prisoners under section 17541); Greene v.

10   Longley, 2011 WL 3924984, at *7 (W.D. Pa. Sept. 7, 2011) (same);

11   Graves v. Babcock, 2011 WL 818447, at *5 (N.D. Fla. Jan. 20, 2011),

12   adopted, 2011 WL 809493 (N.D. Fla. Feb. 28, 2011) (finding that

13   language of statute does not create entitlement to twelve months of

14   RRC placement); Rosario v. Scism, 2011 WL 398200, at *8 (M.D. Pa.

15   Jan. 20, 2011), adopted, 2011 WL 444145 (M.D. Pa. Feb. 1, 2011)

16   (same); Bell v. Zych, 2010 WL 5114504, at *3 (E.D. Mich. Nov. 16,

17   2010), adopted, 2010 WL 5100994 (E.D. Mich. Dec. 9, 2010) (same);

18   Arthur v. Roal, 2010 WL 3025019, at *7 (D. Minn. July 6, 2010),

19   adopted, 2010 WL 3024848 (D. Minn. Aug. 2, 2010) (same); Rodriguez v.

20   Bledsoe, 2010 WL 2471740, at *9 (M.D. Pa. May 7, 2010), adopted, 2010

21   WL 2471697 (M.D. Pa. June 15, 2010) (same); Delacruz v. Bledsoe, 2010

22   WL 1791241, at *10 (M.D. Pa. Mar. 3, 2010), adopted, 2010 WL 1791234

23   (M.D. Pa. May 4, 2010) (same); and see "Report and Recommendation of

24   United States Magistrate Judge" filed on September 28, 2011 in Rowe v.

25   Quintana, Case No. CV 10-8233-SVW(E).

26   ///

27   ///

28   ///

1    In addition to the personal enrichment inherent in a post-

2    secondary education,[15] additional incentives appear to have attended

3    Petitioner's participation in skills development programs.  As

4    Petitioner acknowledges, he was asked to be the keynote speaker at a

5    yearly award ceremony when he completed his college degree (Pet. Memo,

6    p. 6).  Petitioner also received certificates for course completion,

7    the maximum allowable days of good conduct time, a good custody

8    classification score leading to Petitioner's transfer to a prison with

9    a reportedly less-restrictive correctional environment, job placements

10   and performance pay above the maintenance pay level, and no monthly

11   commissary spending limit (Colangelo Decl.  ¶ 16, & Ex. D-3).  Section

12   17541 does not require any further "incentives," much less those

13   particular incentives Petitioner has proposed.[16]

14

15   Petitioner cites certain cases from the Middle District of

16   Pennsylvania as assertedly standing for the proposition that 42 U.S.C.

17   section 17541 was intended to create incentives for a prisoner's

18   participation in skills development programs, apart from consideration

19   for pre-release RRC placement under 18 U.S.C. section 3624(c).  See

20   Pet. Memo, pp. 11-12 (citing inter alia, Krueger v. Martinez, 665 F.

21   Supp. 2d 477, 486 (M.D. Pa. Sept. 3, 2009) ("Krueger")).  These cases

22

23   ─────────────

      [15]    See 28 C.F.R. § 544.20 (providing for inmate
24   participation in postsecondary education programs upon approval);
      Bureau of Prisons, Postsecondary Education Program for Inmates
25   (Dec. 19, 2003), available at http://www.bop.gov/policy/progstat/
      5354_003.pdf (last visited Nov. 7, 2011) (same).
26
      [16]    Petitioner's unit manager has stated that when
27   Petitioner's case is reviewed for pre-release RRC placement 17 to
      19 months prior to his release date, Petitioner's programming
28   will be factored into the determination (Colangelo Decl. ¶ 16).

                                      24

1   do not alter this Court's conclusion.

2

3       In <u>Krueger</u>, the district court interpreted Section 17541 as

4   requiring that the Bureau conduct a second, separate individualized

5   consideration (in addition to consideration under 18 U.S.C. section

6   3624(c)), for a full twelve months of RRC placement as an incentive

7   for those prisoners who participate in skills development programs.

8   <u>Id.</u> at 485-86.  Because the <u>Krueger</u> court could not discern from the

9   record whether the Bureau had separately considered Krueger for a full

10  RRC placement as an incentive for his programming, the court ordered

11  the Bureau to consider separately a twelve-month placement.   <u>Id.</u> at

12  486.

13

14      No district court outside the Middle District of Pennsylvania has

15  agreed with <u>Krueger</u>'s novel interpretation of section 17541.   Many

16  district court decisions subsequent to <u>Krueger</u> have rejected the

17  suggestion that section 17541 requires the consideration of any

18  particular incentives for participation in skills development

19  programming, or requires an RRC consideration separate from the

20  consideration normally given under 18 U.S.C. section 3624(c).   <u>See,</u>

21  <u>e.g.</u>, <u>Crim v. Benov</u>, 2011 WL 1636867, at *7-*11 (E.D. Cal. Apr. 29,

22  2011) (rejecting <u>Krueger</u> and collecting district court cases reaching

23  same conclusion); <u>Greene v. Longley</u>, 2011 WL 3924984, at *7-*8 (same;

24  adopting reasoning in <u>Crim</u>); <u>and see</u> "Report and Recommendation of

25  United States Magistrate Judge" filed on September 28, 2011 in <u>Rowe v.</u>

26  <u>Quintana</u>, Case No. CV 10-8233-SVW(E) (this Court declining to follow

27  <u>Krueger</u>); <u>but see</u> <u>Hill v. Scism</u>, 2011 WL 705354, at *2-*3 (M.D. Pa.

28  Feb. 18, 2011) (following <u>Krueger</u>); <u>McDowell v. Scism</u>, 2011 WL 184013,

1  *5 (M.D. Pa. Jan. 20, 2011) (same); Polishan v. Hubbard, 2011 WL

2  43457, at *4 (M.D. Pa. Jan. 6, 2011) (same).

3

4       This Court once again declines to adopt Krueger's interpretation

5  of section 17541.  The plain language of section 17541 provides that

6  the Bureau "may" (not must) employ a twelve-month RRC placement

7  incentive for prisoner participation in skills development programs.[17]

8  Nothing in the plain language of the statute requires a separate

9  consideration of programming for a twelve-month RRC placement where

10  the Bureau otherwise has accounted for such programming in making its

11  individualized RRC determination under 18 U.S.C. section 3624(c).  The

12  Court must enforce statutes according to their terms.  See Caminetti

13  v. United States, 242 U.S. 470, 485 (1917) ("the meaning of the

14  statute must, in the first instance be sought in the language in which

15  the act is framed, and if that is plain. . . the sole function of the

16  courts is to enforce it according to its terms"); Cowart v. Nicklos

17  Drilling Co., 505 U.S. 469, 475 (1992) ("when a statute speaks with

18  clarity to an issue[,] judicial inquiry. . . is finished").

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  _____

27       [17]    Even the Krueger court "agree[d] that the language of §
    17541 vests discretion with the BOP concerning the type of
28  incentives to award."  Krueger, 665 F. Supp. 2d at 485.

**RECOMMENDATION**

For all the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying and dismissing the Petition without prejudice.

DATED:  November 15, 2011.


_____/s/_____
                    CHARLES F. EICK
            UNITED STATES MAGISTRATE JUDGE

27

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.